UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>GOLDEN GATE NATIONAL PARKS CONSERVANCY,<br><br>               Defendant. | Case No.  13-cv-05568-JSC<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND (Dkt. No. 15) AND STAYING CASE** |

This lawsuit arises out of a May 2011 tram accident on Alcatraz Island.  Plaintiffs in a related action, *Guidry v. Alcatraz*, 12-cv-5639-JSC (N.D. Cal.), have sued the tram manufacturer, Alcatraz Cruises, and the tram operator, the Golden Gate National Parks Conservancy ("the Conservancy"), among others, for personal injuries caused by the accident ("the personal injury action").  The plaintiff insurers in this action, American International Group, Inc. and National Union Fire Insurance Company of Pittsburgh, PA (collectively "AIG"), are paying the defense costs of their insured Alcatraz Cruises in the personal injury action.  AIG filed this declaratory relief and indemnity suit against the Conservancy alleging that the Conservancy and not AIG is responsible for Alcatraz Cruises' defense costs (and any ultimate judgment against Alcatraz Cruises).

Now pending before the Court is the Conservancy's motion to dismiss AIG's First Amended Complaint.  The Conservancy contends that AIG is not entitled to recover any monies from the Conservancy because AIG insured Alcatraz Cruises and therefore is not in an equitably superior position to the Conservancy as a matter of law.  After carefully considering the parties'

submissions, and having had the benefit of oral argument on March 6, 2014, the Court concludes that AIG has not alleged facts sufficient to state claims against the Conservancy based on equitable subrogation; however, the Court also concludes that AIG could allege sufficient facts. Accordingly, the motion to dismiss is granted with leave to amend.  Nonetheless, because AIG's right, if any, to recover from the Conservancy cannot be finally adjudicated until the resolution of the personal injury action, this action is STAYED until further order of the Court.

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

In the related personal injury action, the plaintiffs have sued Alcatraz Cruises and the Conservancy, among others, alleging that "Alcatraz Cruises negligently manufactured and maintained the tram, and that the Conservancy negligently operated the tram, thereby causing their injuries."  (Dkt. No. 8 ¶ 7.)  Prior to the tram accident, Alcatraz Cruises and the Conservancy entered into a Visitor Services Agreement ("the VSA").  Under the VSA, Alcatraz Cruises "was responsible for designing, constructing, and maintaining the tram, while the Conservancy was responsible for operating the tram, including the hiring and training of tram drivers."  (*Id.* ¶ 8.) The VSA also required the Conservancy to name Alcatraz Cruises as an additional insured on its liability policy.  The Conservancy failed to do so.  (*Id.* ¶ 9.)  AIG issued a liability policy to Alcatraz Cruises and has "agreed to defend and indemnify Alcatraz Cruises for all amounts that Alcatraz Cruises will incur in connection with plaintiffs' claims" in the personal injury action.  (*Id.* ¶ 11.)  AIG seeks an order "requiring the Conservancy to reimburse [AIG] for any and all fees, costs, expenses, judgments and/or settlements incurred and/or paid to date or in the future as a result of defending Alcatraz Cruises in the [personal injury action]."  (*Id.* ¶ 17.)

**PROCEDURAL HISTORY**

In the personal injury action Alcatraz Cruises moved for summary judgment that the Conservancy is liable for its defense costs (and any amounts ultimately paid to the *Guidry* plaintiffs) based on the Conservancy's breach of the additional insured provision.  The Court denied the motion on the ground that Alcatraz Cruises had not proved that it has suffered any damages since its insurer, AIG, has paid its defense costs.  (*Guidry v. Golden Gate National Parks Conservancy,* 12-5639-JSC, Dkt. No. 65.)  Alcatraz Cruises argued that the breach of contract

United States District Court
Northern District of California

2

claim was actually being brought by AIG in the name of Alcatraz Cruises pursuant to equitable subrogation; however, the Court rejected that reasoning because there was nothing in the record that supported such an assertion.  In response to that Order, AIG filed this action against the Conservancy in which it expressly brings claims against the Conservancy based on subrogation to Alcatraz Cruises' rights.  (Dkt. No. 8 ¶ 12.)  At the same time, Alcatraz Cruises moved again for summary judgment in the personal injury action seeking the same relief as in its first motion for summary judgment.  The Court again denied the motion for the same reason; namely, Alcatraz Cruises has not suffered any damages and there was nothing in the record to support the attorney argument that AIG was actually making the claim in Alcatraz Cruises' name.  (*Guidry v. Golden Gate National Parks Conservancy,* 12-5639-JSC, Dkt. No. 101.)

To assist the parties, the Court nonetheless went on to address Alcatraz Cruises' motion as if it had been made by AIG.  The Court ruled that to succeed on its claim that the Conservancy— and not AIG—must pay Alcatraz Cruises' defense costs, AIG must prove that it is in an equitably superior position to the Conservancy.  (*Id.*, Dkt. No. 101 at 5-6.)  Because Alcatraz Cruises had not proven that it was indisputably in an equitably superior position to the Conservancy, it denied Alcatraz Cruises' motion for that additional reason.

In the meantime, the Conservancy filed the currently pending motion to dismiss this action initiated by AIG.  The Conservancy's motion is the opposite of Alcatraz Cruises' summary judgment motion: the Conservancy seeks an order that the Conservancy cannot be liable for Alcatraz Cruises' defense costs as a matter of law.  In the alternative, the Conservancy contends that this action is simply premature.

## LEGAL STANDARD

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In evaluating such a challenge, the court accepts the factual allegations in the complaint as true.  *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir.

United States District Court
Northern District of California

3

2001).

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation and internal quotation marks omitted).  Similarly, the Court may dismiss a complaint as a matter of law for "lack of a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

"[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 663-64.

## DISCUSSION

### I.    AIG Has Standing

The Conservancy first contends that AIG lacks standing to seek declaratory relief or indemnification based on the Conservancy's breach of the VSA because AIG is not a party to the contract.  The Court disagrees.  An insurer need not be a party to a contract to assert a contractual indemnity claim, so long as the insurer can subrogate itself to the rights of its insured.  *See Interstate Fire and Cas. Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal. App. 4th 23, 29 (2010).

In *Interstate Fire*, Interstate insured Webcor, a construction contractor, for legal fees and damages arising from a personal liability action.  *Id.* at 28-29.  Cleveland, a subcontractor, agreed to procure its own insurance and name Webcor as an additional insured; however, Cleveland did not do so.  *Id.* at 29.  A different subcontractor's employee subsequently sued Webcor and Cleveland, seeking damages for injuries suffered on the jobsite.  *Id.*  Webcor tendered its defense

4

to Cleveland, but it was rejected, leaving Interstate to pay all of Webcor's costs.  *Id.*  After Webcor settled the employee's action, its insurer, Interstate, filed a breach of contract complaint against Cleveland because Cleveland failed to defend and indemnify Webcor.  *Id.* at 30.  Interstate was not a party to the contract between Webcor and Cleveland, so Cleveland filed a motion to dismiss the insurer's claims.  *Id.*  The court denied Cleveland's motion and allowed Interstate Fire to seek contractual indemnification against Cleveland because Interstate was subrogated to Webcor's rights and "stood in the shoes" of Webcor for the purposes of Webcor's breach of contract claim against Cleveland.  *Id*. at 32.

AIG alleges that it is subrogated to the "rights, claims, and causes of action of [Alcatraz Cruises], arising from the related action [Case No. 12-5639]."  (Dkt. No. 8 ¶ 12.)  Thus, AIG has standing to seek damages arising from the Conservancy's breach of the VSA on behalf of Alcatraz Cruises, despite not being an actual party to the VSA.  The real question is not standing, but rather whether AIG has pled facts sufficient to state an equitable subrogation claim based on the Conservancy's breach of the additional insured provision.

## II.    Plaintiffs Have Failed to State a Claim

"Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim."  *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1291 (1998).  "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid."  *Id*. at 1291-92.  "An insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have."  *Id.* at 1292.  To establish an equitable subrogation claim, the insurer must show:

> (a) [T]he insured suffered a loss for which the defendant is liable, either as the   wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the   defendant is primarily liable; (d) the insurer has paid the claim of its insured to   protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action

against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; *(g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer;* and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund*, 65 Cal. App. 4th at 1292 (emphasis added). The primary issue here is whether AIG has pled facts suggesting that Alcatraz Cruises' loss should be shifted from AIG to the Conservancy. *See State Farm General Ins. Co. v. Wells Fargo Bank, N.A.,* 143 Cal. App. 4th 1098, 1108 (2006) ("In subrogation litigation in California, the doctrine of superior equities is critical in determining whether a right of subrogation exists").

AIG has not pled facts that support an inference that the Conservancy should bear the entire amount of the loss.

Where two parties are contractually bound by independent contracts to indemnify the same person for the same loss, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, if the latter did not cause or participate in causing the loss.

*Patent Scaffolding v. William Simpson Construction Co.*, 256 Cal. App. 2d 506, 514 (1967); *Dobbas v. Vitas*, 119 Cal. App. 4th 1442, 1452 (2011) ("The equities do not permit recovery where the insurer and the third party promised the same thing, to provide insurance."). Here, AIG is bound by its insurance contract to indemnify Alcatraz Cruises. By virtue of its broken promise to name Alcatraz Cruises as an additional insured, is also contractually bound to indemnify Alcatraz Cruises. AIG has not alleged any facts that suggest the Conservancy's (broken) promise trumps AIG's promise.

In *Interstate Fire*, the insurer alleged pursuant to a claim for equitable subrogation that the defendant, Cleveland, should pay the insured's costs because the defendant Cleveland had breached a contractual agreement to name the insured as an additional insured on its own policy and had breached a contractual indemnification provision. 182 Cal. App. 4th at 31. The court held that the defendant's motion to dismiss must be denied because the complaint adequately alleged facts that gave rise to an inference that Cleveland should cover all of the insured's costs. In particular, the insurer alleged that in addition to Cleveland breaching its contractual obligations,

6

1   Cleveland's negligence—and not the insured's—had caused the lawsuit that led to the insured's

2   loss.  *Id.* at 40-41 ("Since it is not alleged that Interstate (or even Webcor) was at fault, the

3   allegations of the first amended complaint give rise to the inference that Cleveland should cover

4   Webcor's defense and settlement costs.").

5         Here, in contrast, AIG does not allege that the Conservancy—and not its insured Alcatraz

6   Cruises—caused the tram accident that led to AIG's loss.  AIG merely alleges that the *Guidry*

7   plaintiffs have themselves alleged that Alcatraz Cruises and the Conservancy are responsible for

8   the tram accident.  (Dkt. No. 8 ¶ 7.)  Thus, all AIG has alleged is, in essence, that it and the

9   Conservancy agreed to insure Alcatraz Cruises and that Alcatraz Cruises and the Conservancy

10  both caused the tram accident.  Since AIG does not allege that the Conservancy alone, or even

11  primarily, is responsible for the tram accident that led to Alcatraz Cruises' loss, it has not alleged

12  facts sufficient to support a finding that the Conservancy, rather than AIG, should bear Alcatraz

13  Cruises' entire loss.  Under *Patent Scaffolding* and *Interstate Fire*, the motion to dismiss must

14  therefore be granted.

15  **III.     Leave to Amend is Warranted**

16        The Conservancy insists that the complaint should be dismissed with prejudice.  It argues

17  that because Alcatraz Cruises' (and hence AIG's) loss was caused by the tram accident and not by

18  the failure to name Alcatraz Cruises as an additional insured, under no circumstances can AIG be

19  in an equitably superior position to the Conservancy.  In other words, the Conservancy maintains

20  that even if it had named Alcatraz Cruises as an additional insured on its own policy, AIG—rather

21  than the Conservancy's insurer—would have had to cover Alcatraz Cruises' defense and

22  indemnity in connection with the tram accident.  The Court disagrees.

23       *Interstate Fire* is again on point.  There the insurer Interstate made claims for contractual

24  equitable subrogation based on the defendant Cleveland's failure to name the insured (Webcor) as

25  an additional insured and Cleveland's breach of the contractual indemnification provision.  182

26  Cal. App. 4th at 29.  The court held that even though Webcor's (and thus Interstate Fire's) loss

27  was caused by the fire, and not Cleveland's contractual breach, it could be fair to require

28  Cleveland to pay all of Webcor's costs rather than Interstate Fire if Cleveland caused the loss.  *Id.*

United States District Court
Northern District of California

at 39.  The court opined that there is "no reason that Cleveland's alleged negligence in causing the loss should be ignored in determining the respective equities of the parties, simply because Interstate is seeking to subrogate to a contractual indemnity claim rather than an equitable indemnity claim." *Id.* at 41.  The court concluded:  "In the final analysis, . . . Interstate's allegations that Cleveland caused the injuries giving rise to the loss supports the inference that Interstate's equitable position is superior to Cleveland's." *Id.* at 42.  Thus, if AIG could allege that the Conservancy caused the tram accident giving rise to the loss it, too, could allege that it is in an equitably superior position to the Conservancy.

The Conservancy's assertion that *Interstate Fire* is limited to contractual indemnity provisions as opposed to contractual additional insured provisions is unpersuasive.  The Conservancy offers no reason why the two contractual promises should be treated differently; each essentially promises the same thing, to provide loss coverage.  Further, the *Interstate Fire* court discussed the indemnification provision as a reason the equities might still favor Interstate even if Cleveland did not cause the loss.  The court stated that "even where the defendant has not caused the loss, the equities may support the insurer where, as here, the defendant expressly promised to indemnify (not just obtain insurance) in a contract related to the project from which the underlying loss occurred." *Id.* at 39.  The court also went on to discuss the indemnification provision at length as an additional and different reason the equities might favor Interstate over Cleveland.  *Id.* at 42-44.  Thus, *Interstate Fire*'s holding that an insurer may be entitled to equitable contractual subrogation if the defendant caused the loss is not limited to contractual indemnification provisions.

The Conservancy's reliance on *Dobbas* and *Patent Scaffolding* is misplaced.  In *Dobbas*, the defendant insurance broker who had failed to obtain the additional insurance did not cause the loss.  191 Cal. App. 4th at 1452.  Indeed, the *Dobbas* court expressly distinguished *Interstate Fire* on this ground.  *Id.* at 1454.  *Patent Scaffolding* does not support the Conservancy's argument for the same reason: the defendant did not cause the insurer's loss.  *Patent Scaffolding* limited its holding to circumstances where the defendant does not cause the loss:

The rule in equitable phraseology is this: Where two parties are

8

> contractually bound by independent contracts to indemnify the same person for the same loss, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, *if the latter did not cause or participate in causing the loss.*

256 Cal. App. 2d at 514 (emphasis added).

In short, the Conservancy does not identify any case that holds that the plaintiff insurer can never be in an equitably superior position to a defendant who breached an additional insured provision *and* caused the insured's loss; accordingly, the request for dismissal without leave to amend is declined.

## IV.    The Action Should be Stayed

While AIG might be able to amend to allege facts to support an inference that it is in an equitably superior position to the Conservancy, it cannot presently satisfy the final element of equitable subrogation: the insurer's damages are in a liquidated sum.  *See Fireman's Fund*, 65 Cal. App. 4th at 1292.  Here, AIG's "damages" are ongoing.  Further, fault for the tram accident has yet to be determined.  Thus, it is premature to decide the equities as between AIG and the Conservancy.  And, as noted by the Conservancy, the VSA includes competing indemnification provisions, the effect of which also has yet to be determined.  In *Interstate Fire,* in contrast, the insurer filed suit *after* it had resolved the underlying personal injury action against its insured.  182 Cal. App. 4th at 30.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

> The competing interests that a district court must weigh in deciding whether to grant a stay include: (1) possible damage which may result from granting a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  A stay may be the most efficient and fairest course when there are independent proceedings which bear upon the case.

*Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*, 2009 WL 1010842, at *4 (N.D. Cal. Apr. 14,

2009) (internal quotation marks and citation omitted).  Here, the Court can discern no reason not to stay this action; accordingly, it shall exercise its discretion to do so.

## CONCLUSION

AIG and the Conservancy (through an additional insured contract) both agreed to insure Alcatraz Cruises for the same risk.  As AIG has not alleged facts sufficient to support an inference that would require the Conservancy to bear Alcatraz Cruises' entire loss, the Conservancy's motion to dismiss is granted with leave to amend.  Nonetheless, because the parties' respective equities cannot be determined until the personal injury action is resolved, this action is STAYED until further order of the Court.

This Order disposes of Docket No. 15.

**IT IS SO ORDERED.**

Dated: March 25, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge